11-17869

## UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

---

TERI H. NGUYEN

Plaintiff-Appellant,

v.

BANK OF AMERICA, N.A. and JPMORGAN CHASE BANK,

Defendants-Appellees.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

---

PLAINTIFF-APPELLANT'S CORRECTED OPENING BRIEF

---

Julie Cliff, Esq.
Attorneys for Plaintiff-Appellant
25A Crescent Dr., #363
Pleasant Hill, CA 94523
Telephone: (719) 331-0727

TABLE OF CONTENTS

I.      JURISDICTIONAL STATEMENT ..............................................................1

  A.  Basis For The District Court's Jurisdiction .....................................1

  B.  Basis For The Appellate Court's Jurisdiction .................................1

  C.  Filing Dates Establishing The Timeliness Of The Appeal..............................1

  D.  Appeal Is From A Final Order Or Judgment That Disposes Of All Parties' Claims ....................................................................2

II.     STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .................2

III.    PERTINENT STATUTE.........................................................................3

IV.     STATEMENT OF THE CASE ..............................................................6

  A.  Nature of the Case ............................................................................6

  B.  Course of Proceedings .....................................................................6

  C.  Disposition Below ............................................................................7

V.      STATEMENT OF FACTS ....................................................................7

  A.  The Two Loans in 2007 with Washington Mutual Bank FA. .........7

  B.  Wamu's Fraud At Loan Origination ................................................8

  C.  Chase Claimed To Be The New Servicer of Nguyen's Loans. .......9

  D.  Chain of Title.................................................................................10

  E.  State Court Action .........................................................................13

  F.  Bankruptcy Proceeding ..................................................................14

VI.     SUMMARY OF THE ARGUMENT .....................................................16

VII.    ARGUMENT......................................................................................17

  A.  Standard of Review ........................................................................17

  B.  The Trial Court Erred in Dismissing Nguyen's Claim for Violation Of California Civil Code § 2923.5....................................18

  C.  Nguyen's First Amended Complaint States Facts Sufficient To State A Claim For Relief For Wrongful Foreclosure. ...............................24

i

D.  Nguyen's First Amended Complaint Alleged Facts Sufficient to State a Claim For Cancellation Of Instrument. ...............................................................25

E.  Nguyen's First Amended Complaint Adequately States A Claim For Relief For Slander Of Title. .........................................................................27

F.  Nguyen's First Amended Complaint Alleges Facts Sufficient To State A Claim For Injunctive Relief. ...................................................................28

G.  Nguyen's First Amended Complaint States Facts Sufficient To State A Claim For "Quasi-Contract." ...................................................................34

H.  Nguyen's First Amended Complaint States Facts Sufficient To State A Claim For Unfair Business Practices. ...........................................................34

I.  Nguyen Should Have Been Granted Leave To Amend ................................35

J.  The Trial Court Erred In Entering An Order For Sanctions. .......................36

VIII.  CONCLUSION.............................................................................37

IX.  STATEMENT OF RELATED CASES...............................................37

X.  CERTIFICATE FOR BRIEF IN PAPER FORMAT ....................................40

## TABLE OF AUTHORITIES

**Cases**

*Albertson v. Taboff* (1956) 46 Cal.2d 375 ............................................................28

*Argueta v. J.P. Morgan Chase* (E.D.Cal. 2011) 787 F.Supp.2d 1099, 1107 ..........24

*Balisteri v. Pacifica Police Dept.*, 901 F2d 696, 699 (9th Cir 1990) ......................17

*Barrionuevo v. Chase Bank,* 885 F.Supp.2d 964, 976-977 (N.D.Cal. 2012) ..........23

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.2d 336, 337-38 (9th Cir. 1996)......................18

*Forman v. Davis*, 371 U.S. 178, 182 (1962)............................................................38

*Ghirado v. Antonioli* (1996) 14 Cal. 4th 39, 51 ......................................................36

*Gonzalez v. Raich*, 545 U.S. 1 (2005).....................................................................30

*Graehling v. Village of Lombard, III*, 58 F.3d 295, 297 (7th Cir. 1995)................18

*Gudger v. Manton* (1943) 21 Cal.2d 537 ........................................................ 28, 29

*Hooker v Northwest Trustee Services, Inc., et al.*, U.S. Dist. Ct., Ore., case no. 10-3111-FA ................................................................................................................31

*In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005) ....................................38

*Intengon v. BAC Home Loans Servicing, LP*, 214 Cal.App.4th 1047 (2013) ..........21

*Intri-Plex Techs. v. Crest Grp., Inc.*, 49 F.2d 1048, 1056 (9th Cir. 2007) ..............38

*Javaheri v. JPMorgan Chase Bank*, US Dist. Ct., CD of Calif., case no. CV10-08185 ODW, June 2, 2011................................................................................32

*Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369............................ 21, 23

*Kim v. JPMorgan Chase Bank, N.A.*, 2012 Mich. LEXIS 2220.............................33

*Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)..............................................38

*Mabry v. Superior Court*, 185 Cal.App. 4th 208, 235-236 (Cal. App. 2010) ..........23

*Munger v. Moore* (1970) 11 Cal.App.3d 1, 7 ..........................................................25

*Raich v. Ashcroft*, 352 F.3d 1222, 1227 (9th Cir. 2003)..........................................30

*Sacchi v. MERS, et al.*, (2011) (U.S. Dist. Ct., CD of Cal. case no. 11-cv-1958)...27

*Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974) ..............................17

*Skov v. U.S. Bank National Assn.* (2012) 207 Cal.App.4th 690 ..............................22

*Spencer v. Harmon Enterprises, Inc.* 91965) 234 Cal.App.2d 614, 622.................29

*Wutzke v. Bill Reid Painting Service* (1984) 151 Cal.App. 3d 36 ...........................26

**Statutes**

28 U.S.C. § 1291.........................................................................................................1

28 U.S.C. § 2201(a) ....................................................................................................1

Cal. Bus. & Prof. Code § 17200 ...............................................................................4

Cal. Civ. Code § 2923.5 ..................................................................... 4, 16, 21, 22

**Rules**

Fed.R.Civ.P. 65 ...............................................................................................18

Fed.R.Civ.P. 12(b)(6)................................................................................ 13, 14

**Treatises**

*4 WITKIN, SUMMARY OF CALIFORNIA LAW (10TH ED. 2005) SECURED TRANSACTIONS IN
    REAL PROPERTY*, 168 .............................................................................23

*MILLER AND STARR*, CALIFORNIA REAL ESTATE 3D, RECORDING PRIORITIES, 108-109
    ...............................................................................................................17

# I.     JURISDICTIONAL STATEMENT

## A.     Basis For The District Court's Jurisdiction

The United States District Court for the Northern District of California has original jurisdiction of this civil action.  The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.  Plaintiff-Appellant Teri H. Nguyen is a citizen of the State of California.  Defendant Bank of America, N.A., is a national banking association with its principal place of business in Charlotte, North Carolina.  JPMorgan Chase Bank is a corporation organized and existing under the laws of the State of New York.

The District Court also has jurisdiction pursuant to the Federal Declaratory Judgment Act.  28 U.S.C. § 2201(a).

## B.     Basis For The Appellate Court's Jurisdiction

This United States Court of Appeals has jurisdiction over this appeal as it arises from a final decision of a United States District Court.  28 U.S.C. § 1291.

## C.     Filing Dates Establishing The Timeliness Of The Appeal.

Plaintiff-Appellant filed her Notice of Appeal with the District Court on November 28, 2011.  (Excerpts, at 1.)  The Circuit Mediator of the Ninth Circuit Court of Appeals then re-set the briefing schedule.  On April 5, 2013, the Clerk filed an amended order stating that Appellant is to file a replacement opening brief

1

and excerpts of record on or before April 30, 2013.  Appellant then filed a motion

for extension of time, which was granted.  On May 30, 2013, the clerk entered an

order extending that deadline to June 27, 2013. The answering brief is due July 29,

2013, and the optional reply brief is due within 14 days after service of the

answering brief.

**D.     Appeal Is From A Final Order Or Judgment That Disposes Of All Parties' Claims**

The United States District Court for the Northern District of California

entered an order granting Defendants-Appellees' motion to dismiss plaintiff's

claims with prejudice.  (Excerpts, at 147.)  That order was a final decision.

## II.     STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.  Whether the district court erred in ruling that Nguyen's first amended complaint failed to allege facts sufficient to state a claim for violation of California Civil Code § 2923.5.

2.  Whether the district court erred in ruling that Nguyen's first amended complaint failed to allege facts sufficient to state a claim for wrongful foreclosure.

3.  Whether the district court erred in ruling that Nguyen's first amended complaint failed to allege facts sufficient to state a claim for cancellation of instrument.

4.  Whether the district court erred in ruling that Nguyen's first amended complaint failed to allege facts sufficient to state a claim for slander of title.

5. Whether the district court erred in ruling that Nguyen's first amended complaint failed to allege facts sufficient to state a claim for injunctive relief.

6. Whether the district court erred in ruling that Nguyen's first amended complaint failed to allege facts sufficient to state a claim for quasi-contract.

7. Whether the district court erred in ruling that Nguyen's first amended complaint failed to allege facts sufficient to state a claim for unfair business practices.

8. Whether the district court erred in denying Nguyen leave to amend her complaint.

9. Whether the district court erred in entering an order for sanctions.

## III.   PERTINENT STATUTE

California Civil Code § 2923.5 states:

2923.5.  (a) (1) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until both of the following:
   (A) Either 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (e).
   (B) The mortgage servicer complies with paragraph (1) of subdivision (a) of Section 2924.18, if the borrower has provided a complete application as defined in subdivision (d) of Section 2924.18.
   (2) A mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgage servicer shall advise the borrower that  he or she has the right to request a subsequent meeting and, if  requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at

3

the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

(b) A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

(c) A mortgage servicer's loss mitigation personnel may participate by telephone during any contact required by this section.

(d) A borrower may designate, with consent given in writing, a HUD-certified housing counseling agency, attorney, or other advisor to discuss with the mortgage servicer, on the borrower's behalf, the borrower's financial situation and options for the borrower to avoid foreclosure. That contact made at the direction of the borrower shall satisfy the contact requirements of paragraph (2) of subdivision (a). Any loan modification or workout plan offered at the meeting by the mortgage servicer is subject to approval by the borrower.

(e) A notice of default may be recorded pursuant to Section 2924 when a mortgage servicer has not contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact the borrower occurred despite the due diligence of the mortgage servicer. For purposes of this section, "due diligence" shall require and mean all of the following:

(1) A mortgage servicer shall first attempt to contact a borrower
by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(2) (A) After the letter has been sent, the mortgage servicer shall attempt to contact the borrower by telephone at least three times at different hours and on different days. Telephone calls shall be made to the primary telephone number on file.

4

(B) A mortgage servicer may attempt to contact a borrower using an automated system to dial borrowers, provided that, if the telephone call is answered, the call is connected to a live representative of the mortgage servicer.

(C) A mortgage servicer satisfies the telephone contact requirements of this paragraph if it determines, after attempting contact pursuant to this paragraph, that the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected.

(3) If the borrower does not respond within two weeks after the telephone call requirements of paragraph (2) have been satisfied, the mortgage servicer shall then send a certified letter, with return receipt requested.

(4) The mortgage servicer shall provide a means for the borrower to contact it in a timely manner, including a toll-free telephone number that will provide access to a live representative during business hours.

(5) The mortgage servicer has posted a prominent link on the homepage of its Internet Web site, if any, to the following information:

(A) Options that may be available to borrowers who are unable to afford their mortgage payments and who wish to avoid foreclosure, and instructions to borrowers advising them on steps to take to explore
those options.

(B) A list of financial documents borrowers should collect and be prepared to present to the mortgage servicer when discussing options for avoiding foreclosure.

(C) A toll-free telephone number for borrowers who wish to discuss options for avoiding foreclosure with their mortgage servicer.

(D) The toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(f) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(g) This section shall apply only to entities described in subdivision (b) of Section 2924.18.

(h) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted

statute, that is enacted before January 1, 2018, deletes or extends that date.

California Civil Code § 2923.5.

## IV.   STATEMENT OF THE CASE

### A.   Nature of the Case

Plaintiff-appellant Teri Nguyen ("Nguyen") was the original owner of residential real property.  (Excerpts, at 25.)  In April 2007 Washington Mutual Bank F.A. ("WaMu") refinanced her mortgage loan.  (*Id*.)

In September 2008, WaMu was shut down by the Office of Thrift Supervision.  (*Id*.)  FDIC, as receiver of WaMu assets, sold WaMu assets to JPMorgan Chase Bank ("Chase").  (*Id*.)  Chase then claimed to be the new servicer of Nguyen's loans and instructed Nguyen to send payment to them.  (*Id*.)  Nguyen, due to a serious illness, fell behind on her payments.  (Excerpts, at 26.)  Chase and/or its agents did not contact Nguyen to discuss loan modification prior to recording a notice of default.  (Excerpts, at 35, 37.)  Chase then recorded a Notice of Default and a Notice of Trustee's Sale.  (Excerpts, at 16, 19, 27, 30, 32, 88, 91.)

### B.   Course of Proceedings

In August 2011, Nguyen filed her first amended complaint in the United States District Court for the Northern District of California bringing claims for cancellation of deed instrument, slander of title, injunctive relief, violation of

6

California Civil Code § 2923.5, wrongful foreclosure, quasi-contract, and unfair business practices (Cal. Bus. & Prof. Code § 17200 *et seq*.).  (Excerpts, at 22.)  On August 22, 2011, Bank of America, N.A. and JPMorgan Chase Bank filed a motion to dismiss the first amended complaint.  (Excerpts, at 6; ND of Cal. case no. 11-cv-03318, doc. nos. 33-34.)  On November 3, 2011, Nguyen filed a response to the motion to dismiss.  (Excerpts, at 6; ND of Cal. case no. 11-cv-03318, doc. no. 38-39.)

**C.    Disposition Below**

On November 15, 2011, the district court granted the motion to dismiss. (Excerpts, at 147-166.)

## V.    STATEMENT OF FACTS

**A.    The Two Loans in 2007 with Washington Mutual Bank FA.**

Nguyen was the original owner of the property.  (Excerpts, at 25.)  In April 2007 Washington Mutual Bank F.A. ("WaMu") refinanced her mortgage loan in the amount of $2,500,000 (the "Loan").  (*Id*.)  For this loan, she signed a promissory note (the "Note") and a deed of trust dated April 24, 2007 (the "DOT") which secured the Note.  (Excerpts, at 25, 46-66.)  On May 1, 2007, the DOT was recorded at the Santa Clara County Recorder's Office.  (Excerpts, at 25, 51.)  The DOT designates California Reconveyance Company ("CRC") as trustee. (Excerpts, at 52.)

Nguyen also obtained a second mortgage loan from WaMu in the amount of $855,000 (the "Second Loan"). (Excerpts, at 25.) For this loan, she signed a promissory note (the "Second Note") and another deed of trust (the "Second DOT") which secured the Second Note. (Excerpts, at 25, 68-83.) The Second DOT was also recorded at the Santa Clara County Recorder's Office on May 1, 2007. (*Id.*)

After the loan transactions were completed, Nguyen dutifully made payments on the two loans to WaMu until WaMu went out of business. (Excerpts, at 25.)

## B.     Wamu's Fraud At Loan Origination

In April 2007, at the time the two WaMu loans were originated, at WaMu's request, Nguyen submitted information relating to the property and her financial situation (profit and loss statement, tax returns, bank account statements, etc.) to WaMu. (Excerpts, at 29-30.) Upon receiving the said information and documents from Nguyen via its loan officer David Huang, WaMu proceeded to prepare and complete the application for and on behalf of Nguyen. (*Id.*) After being prepared by WaMu, the loan application was never given back to Nguyen for her signature. (*Id.*) Relying on Huang's representation that it would be a simple process due to the fact that Nguyen was a long-time customer of WaMu, Nguyen did not request a copy of the application for her review and verification of the information contained

8

therein.  (*Id*.)  Afterwards, WaMu informed Nguyen that her loan application was approved.  (*Id*.)

Later, in July 2008, Nguyen discovered that her loan application had been fabricated.  (Excerpts, at 29.)  Nguyen submitted a Qualified Written Request.  (*Id*.)  In response, she received loan documents provided by WaMu.  (*Id*.)  The application did not have her signature, and contained information that was falsified.  (Excerpts, at 29, 135-38.)

On the "Loan Application," Nguyen's monthly income (in 2007) was inflated to "$25,001" for "Base Employment Income" and "$94.051" [sic] for "Other Income."  (Excerpts, at 136.)  Nguyen has no knowledge of where those figures came from.  (Excerpts, at 29.)

On the "Loan Application," the balance of one of Nguyen's bank accounts is shown as "$400,000" with "Account No. 11111111111."  (Excerpts, at 136.)  Again, Nguyen has no knowledge of where those figures came from.  (Excerpts, at 30.)

**C.     Chase Claimed To Be The New Servicer of Nguyen's Loans.**

On September 25, 2008, WaMu was shut down by the Office of Thrift Supervision (OTS).  (Excerpts, at 25.)  FDIC, as receiver of WaMu assets, sold WaMu assets to JPMorgan Chase Bank ("Chase") for $1.9 billion.  (*Id*.)  Chase

9

then claimed to be the new servicer of Nguyen's loans and instructed Nguyen to send payment to them.  (*Id*.)

In the aftermath of the collapse of WaMu and later by Lehman Brothers, the U.S. economy began to drastically decline.  (Excerpts, at 25.)

Nguyen continued to make payments on the Note.  (Excerpts, at 25-26.)  In December 2008, Nguyen suffered a serious health problem and fell behind on payments.  (Excerpts, at 26*.*)  She unsuccessfully sought loan modification from Chase.  (*Id.*)

## D.    Chain of Title

On March 27, 2009, Chase executed an Assignment of Deed of Trust ("ADOT) that "hereby grants, assigns and transfers to Bank of America National Association successor by merger to LaSalle Bank NA as trustee for WaMu Mortgage Pass-Through Certificates Series 2007-HY7 Trust all beneficial interest under that certain Deed of Trust dated April 24, 2007 … TOGETHER with the note or Notes."  (Excerpts, at 26, 85-86.)  On March 30, 2009, the ADOT was recorded at the Santa Clara County Recorder's Office.  (*Id*.)

Chase claimed to be "successor in interest to Washington Mutual Bank, EA" and as party holding beneficial interest in Nguyen's Note that is secured by the DOT.  (Excerpts, at 26.)  However, such claim is contrary to Chase's assertion in

other cases pending in other courts that Chase is NOT successor in interest to Washington Mutual Bank, FA.  (*Id*.)

Bank of America as successor indenture trustee of WaMu 2007-HY7 Trust claims beneficial interest in the obligation (Note) executed by Nguyen purportedly delivered together with the ADOT from Chase.  (Excerpts, at 23.)

No document has been recorded with the Santa Clara County Recorder's Office that assigns the beneficial interest in Nguyen's DOT from FDIC to Chase. (Excerpts, at 26.)

At all times mentioned herein, Bank of America as indenture trustee never notified Nguyen of its purported ownership in the Note and the DOT that secured such Note.  (*Id*.)  Nguyen did not know Bank of America was a creditor.  (*Id*.)

Also on March 30, 2009, at Chase's instruction, trustee CRC recorded a purported Notice of Default ("NOD") on the Property.  (Excerpts, at 27, 88.)  At that time, Chase had no beneficial interest in the DOT. (*Id*.)

On July 20, 2009, a Notice of Default was purportedly signed by "*Deborah Brignac, Vice-President of CRC.*"  (Excerpts, at 27, 95-98.)  Recently, this person has been identified as a "robo-signer," because many signatures bearing her name, but different from each other, appear in nationwide public forums.  (*Id*.)

The recorded ADOT and the recorded ADOT1 state the name of the assignee as "Bank of America N.A., As Successor By Merger To LaSalle Bank,

11

N.A., As Trustee For WaMu Mortgage Pass-Though Certificates Series 2007-HY07 Trust," hereinafter the "WaMu 2007-HY07 Trust." (Excerpts, at 26.)

There is no evidence whatsoever that the WaMu 2007-HY07 Trust has any interest in Nguyen's loans. (Excerpts, at 30.) Nevertheless, Bank of America as indenture trustee asserted a trust interest in Nguyen's loans. (*Id*.)

The WaMu 2007-HY7 Trust contains a pool of mortgage notes with an aggregate value claimed to be approximately $2 billion. (*Id*.) The trustee was LaSalle Bank National Association ("LaSalle Bank"). (*Id*.) Securities backed by these notes (mortgage-back securities, or MBS) were issued and sold to investors around the world. (*Id*.) These securities were labeled "WaMu Mortgage Pass-Through Certificates Series 2007-HY7" (hereinafter the "Certificates Series 2007-HY7.") (*Id*.)

Pursuant to an agreement known as the Certificates Series 2007-HY7 Trust's Pooling Service Agreement (the "Trust PSA"), WaMu, which no longer had ownership interest in the Loan, retained the servicing rights with respect to the notes contained in the pool. (Excerpts, at 30.)

The pool of Notes were sold by WaMu to WaMu Asset Acceptance Corporation ("WAAC") and then to the trust. (*Id*.) In this case, the 2007-HY07 Trust claims beneficial interest in Nguyen's mortgage directly from Chase, contrary to the terms of the trust. (*Id*.)

12

On June 30, 2011, CRC, as instructed by Chase, who has no beneficial interest in Nguyen's mortgage, recorded a new Notice of Sale (the "06/30/11 OS"). (Excerpts, at 30, 143-44.)  The 06/30/11 NOS set an auction date of August 2, 2011.  (*Id*.)  The auction date was then rescheduled to August 10, 2011.  (Excerpts, at 30, 146.)

The recording of the foregoing documents directly impaired the vendibility of the property on the open market.  (Excerpts, at 33.)

**E.     State Court Action**

In 2009, Nguyen filed a Complaint against Chase in Santa Clara County Superior Court, Case No. 09-cv-159463.  (Excerpts, at 27.)  The complaint alleged fraud, unfair business practices, and wrongful foreclosure, among other causes of action.  (*Id*.)  On the same day, Nguyen applied *ex parte* for a temporary restraining order to stop the foreclosure sale.  (*Id*.)  The court granted the temporary restraining order and set a hearing on the application for injunctive relief.  (*Id*.)

At the preliminary injunction hearing, Chase represented to the court that:

a.     Chase was the owner of the Note, and

b.     Chase was not responsible for the fraud committed by WaMu because Chase bought from FDIC only WaMu's assets and not WaMu's liabilities.  (*Id*.)

13

F.    **Bankruptcy Proceeding**

On February 1, 2010, Nguyen transferred title to the property to Rose Court LLC (of which she is a member) which she believed was better equipped to deal with foreclosing lenders on legal matters.  (Excerpts, at 28.)  Rose Court LLC, on February 1, 2010, filed for Chapter 11 bankruptcy protection in the Bankruptcy Court of the Northern District of California, Case No. 10-0993-SLJ.  (*Id.*)

On July 27, 2010, Bank of America submitted its proof of claim ("POC") as indenture trustee of 2007-HY07 Trust. (*Id.*)  This is the first time Bank of America ever appeared in any court proceeding involving the Note.  (*Id.*)  Bank of America's POC included the 03/27/09 ADOT, and a promissory note and a deed of trust that belong to another borrower unknown to Nguyen.  (*Id.*)

On August 18, 2010, Bank of America filed an Amended Proof of Claim. (Excerpts, at 100-131.)

In November 2010, Bank of America filed a motion for relief from automatic stay.  (Excerpts, at 28.)  This time, Bank of America presented a new Assignment of Deed of Trust dated August 24, 2010 and executed by "Wanda Chapman, Vice President of Chase" as "Successor-in-Interest to Washington Mutual Bank, fka Washington Mutual Bank, FA" (hereinafter "ADOT1"). (Excerpts, at 28, 133.)  Similar to the March 27, 2009 ADOT, the August 24, 2010 Assignment contains language that Chase "hereby grants, assigns and transfers to

14

Bank of America National Association, successor by merger to LaSalle Bank, NA, as trustee for WaMu Mortgage Pass-Through Certificate Series 2007-HY7 Trust all beneficial interest under that certain Deed of Trust dated April 24, 2007…" (*Id.*) The relief was not granted. (Excerpts, at 28.)

The ADOT1 dated August 24, 2010, was not recorded with the Santa Clara County Recorder's Office. (*Id.*)

During the Chapter 11 case, Chase represented to Nguyen that the bankruptcy case needed to be dismissed as a prerequisite for settlement and modification. (Excerpts, at 29.) In reliance on such representation, in May 2011, the debtor dismissed the chapter 11 case. (*Id.*)

Chase then denied modification of Nguyen's loan. (*Id.*)

15

## VI.   SUMMARY OF THE ARGUMENT

The trial court erred in dismissing Nguyen's claim based upon violation of California Civil Code § 2923.5.  There is an issue of fact as to whether Chase and/or its agents satisfied its due diligence obligations under § 2923.5.  Nguyen adequately alleged facts in her First Amended Complaint that support her claim. Even then, she could have amended her complaint to provide additional facts.  The order granting dismissal of her claim for violation of § 2923.5 and the trial court's refusal to allow her leave to amend was in error.

The trial court also erred in dismissing Nguyen's claims for wrongful foreclosure, cancellation of instrument, slander of title, unfair business practices, quasi-contract and injunctive relief.  Nguyen adequately alleged facts in her First Amended Complaint to support her claims.  And even then, could have amended her complaint to provide additional facts if allowed to do so.

The order of dismissal entered in this case was improvidently granted and based upon allegations made by the defense that were irrelevant and prejudicial. This case should be remanded with instructions to reverse the dismissal and allow Nguyen an opportunity to prove her claims.

16

# VII.  ARGUMENT

## A.    Standard of Review

The district court's order should be reviewed *de novo*.  *Movsesian v. Victoria Versicherung AG*, 629 F.3d 901, 905 (9th Cir. 2010).  The court should look at the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered, giving no deference to the district court's determinations.  *McComish v. Bennett*, 611 F.3d 510, 519 (9th Cir. 2010).

A Fed.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint.  "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamc Development Corp*., 108 F.3d 246, 49 (9th Cir. 1997).  A. Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balisteri v. Pacifica Police Dept*., 901 F.2d 696, 699 (9th Cir 1990); *Graehling v. Village of Lombard, III*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a Rule 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded

factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co*., 80 F.2d 336, 337-38 (9th Cir. 1996).

**B.     The Trial Court Erred in Dismissing Nguyen's Claim for Violation Of California Civil Code § 2923.5.**

The trial court dismissed Nguyen's claim for violation of California Civil Code § 2923.5, erroneously stating that Nguyen must show that *she* undertook negotiations with Chase.  (Excerpts, at 159.)

Civil Code § 2923.5 precludes a trustee or mortgage servicer from recording a notice of default until 30 days after the loan servicer has made initial contact with the borrower to assess the borrower's financial situation and explore options for avoiding foreclosure, or has satisfied the due diligence requirements of the statute. (Civil Code, § 2923.5(a)(1).) Due diligence requires sending a letter by first-class mail, making three attempts to contact the borrower by telephone, and sending a certified letter if no response is received within two weeks of the telephone attempts. (Civil Code, § 2923.5(e).)

First, the trial court erred in placing the burden on Nguyen to contact the lender or its agent.  The court stated in its order granting dismissal "..Plaintiff must allege that she undertook negotiations with Chase…"  (Excerpts, at 159.) California Civil Code § 2923.5 places the burden upon the lender to initiate contact.  It does not place the burden on the borrower.  (*Id*.)

18

Second, Nguyen expressly alleged in her Verified First Amended Complaint that Bank of America and Chase did not perform any of the due diligence requirements pursuant to Civil Code § 2923.5. Nguyen set forth the requirements of § 2923.5 in her First Amended Complaint and stated "These Defendants did none of the above." (Excerpts, at 36-37.)

Nguyen attached to her First Amended Complaint a Notice of Default with a second page that requests that the borrower contact California Reconveyance Company to discuss "alternatives other than foreclosure, which may be available to you." (Excerpts, at 88-89.) In the trial court, Bank of America and Chase Bank sought judicial notice of a notice of default which differs markedly from the notice of default submitted by Nguyen. (Excerpts, at 16-17.) On the second page of that notice of default is a declaration of due diligence, which averred that "[t]he beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code 2923.5, ..." (*Id*., at 17.) But in her Verified First Amended Complaint, Nguyen stated that "Defendant Chase did not contact the designated attorney in person or by telephone, to discuss [Nguyen]'s financial condition and the impending foreclosure. Chase did not call, it did not write, and it did not provide a toll-free HUD number to [Nguyen] or her attorney. Chase did not offer to meet with

19

[Nguyen] or her attorney and did not advise them that [Nguyen] had a right to request a subsequent meeting within 14 days." (Excerpts, at 35.)

It is clear here that Nguyen adequately stated a cause of action for wrongful foreclosure based on Chase's alleged noncompliance with Civil Code section 2923.5. Nguyen alleged that defendants did not contact her or attempt to contact her with due diligence as required by the statute. (*Id*.) Although Bank of America and Chase sought judicial notice of a declaration regarding compliance with the statute, Nguyen submitted a notice of default that is differs from the notice of default submitted by Bank of America and Chase and that does not contain a due diligence declaration. (Excerpts, at 17, 35.) And in this appeal Nguyen argues that, while judicial notice may be taken of the existence of a document such as a declaration, accepting the truth of its contents presents an entirely different matter. *See, e.g.*, *Intengon v. BAC Home Loans Servicing, LP*, 214 Cal.App.4[th] 1047 (2013).

"California Civil Code section 2923.5 requires not only that a declaration of compliance be attached to the notice of default, but that the bank actually perform the underlying acts (i.e., contacting the borrower or attempting such contact with due diligence) that would constitute compliance. While judicial notice could be properly taken of the existence of [the due diligence] declaration, it could not be taken of the facts of compliance asserted in the declaration, at least where, as here,

20

[the borrower] has alleged and argued that the declaration is false and the facts asserted in the declaration are reasonably subject to dispute." (*Id*., *see, e.g., Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374-376 (*Joslin*) [facts disclosed in a deposition and not disputed could be considered in ruling on a demurrer, but facts disclosed in the deposition that were disputed could not be, since "`judicial notice of matters upon demurrer will be dispositive only in those instances where there is not or cannot be a factual dispute concerning that which is sought to be judicially noticed.'"].)

While the trial court here may take judicial notice of the documents submitted, it is inappropriate for the trial court to take as true the underlying statements pertaining to Chase's purported attempts to contact Nguyen.

Taking judicial notice that Bank of America, Chase or its agent actually performed certain acts that might constitute compliance with its statutory obligations, based solely on a declaration that avers compliance in a conclusory manner, would of course be vastly different than merely taking judicial notice that the declaration was signed and attached to the notice of default. At least in this case, what the bank actually did to comply with the statute is reasonably subject to dispute and cannot be judicially noticed, even though the existence of the declaration (and the legal effect of a deed of trust) is not reasonably subject to dispute and can be judicially noticed. (*See Skov v. U.S. Bank National Assn*. (2012)

21

207 Cal.App.4th 690, 696 (*Skov*) [where bank sought judicial notice of a notice of default declaration stating compliance with Civil Code, § 2923.5, whether the bank "complied with section 2923.5 is the type of fact that is reasonably subject to dispute, and thus, not a proper subject of judicial notice"].)

Further, even if the "facts" stated in the due diligence declaration could be the subject of judicial notice, the declaration contains only a conclusory assertion that Bank of America, Chase or its agent complied with the statute: nowhere does it state when, how, or by whom the elements of due diligence were accomplished, or how the declarant knew if they were.  More importantly, the most these averments could do is create a factual dispute as to whether Bank of America, Chase or its agent complied with the statute. (*See Mabry v. Superior Court*, 185 Cal.App. 4th 208, 235-236 (Cal. App. 2010) [competing accounts as to possibility of compliance with Civ. Code, § 2923.5 created conflict in the evidence].) A demurrer is "'simply not the appropriate procedure for determining the truth of disputed facts.'" (*Joslin v. H.A.S. Ins. Brokerage*, 184 Cal.App.3d 369, 374-5 (1986); *see Skov, supra*, 207 Cal.App.4th at pp. 696-697 [assuming the truth of the plaintiff's allegations, a disputed issue of compliance with Cal. Civ. Code § 2923.5 cannot be resolved at the demurrer stage]; *see also, Barrionuevo v. Chase Bank,* 885 F.Supp.2d 964, 976-977 (N.D.Cal. 2012) [borrowers' allegation that bank did not contact them before filing the notice of default was sufficient to state a

violation of Civ. Code § 2923.5, despite judicial notice taken of declaration in notice of default that asserted statutory compliance]; *Argueta v. J.P. Morgan Chase* (E.D.Cal. 2011) 787 F.Supp.2d 1099, 1107 (*Argueta*) [despite judicial notice of notice of default including declaration of compliance with Civil Code, § 2923.5, plaintiff's allegations were sufficient to preclude dismissal where plaintiffs alleged that they did not receive phone calls, phone messages, or letters before the notice of default was recorded].)

On this basis, Nguyen stated a cause of action for wrongful foreclosure based on the purported failure to comply with Civil Code § 2923.5 before recordation of the notice of default. Chase is liable for its own actions. This claim for relief does not depend upon any issues regarding chain of title. If Chase was not the owner of the beneficial interest at the time the notice of sale was recorded, then the foreclosure was void or voidable. If Chase was the owner of the beneficial interest, then it needed to satisfy the due diligence requirements of § 2923.5, and if it fails to do so it is liable. For this reason, it was error to dismiss Nguyen's claims for wrongful foreclosure and violation of § 2923.5.

Even assuming *arguendo* that Nguyen did not sufficiently state her claim, leave to amend should have been granted so that she could allege additional facts to support it.

23

**C.     Nguyen's First Amended Complaint States Facts Sufficient To State A Claim For Relief For Wrongful Foreclosure.**

The elements of a common law cause of action for damages for wrongful foreclosure are: (1) Trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property; (2) pursuant to a power of sale contained in a mortgage or deed of trust, and (3) the trustor or mortgagor sustained damages. *Munger v. Moore* (1970) 11 Cal.App.3d 1, 7; *see also generally* 4 WITKIN, SUMMARY OF CALIFORNIA LAW (10TH ED. 2005) SECURED TRANSACTIONS IN REAL PROPERTY, 168.

The First Amended Complaint alleges:

(1)     JPMorgan received no assignment of the note and the deed of trust on the property from FDIC, which was the receiver of Washington Mutual Bank FSB assets.  (Excerpts, at 37.)

(2) the transfer of the loan into the trust on 03/27/09 is a violation of the terms of the trust.  (*Id.*)

(3) that the terms of the trust contradict claims made by Bank of America (*Id.*)

(4) In spite of the fact that the defendants had no power or standing, they went ahead and began foreclosure upon Nguyen's home. (*Id.*)

24

These allegations are more than sufficient to survive a motion to dismiss or a motion for summary judgment. Whether these allegations are ultimately proven to be true is not within the scope of a motion to dismiss.

**D.    Nguyen's First Amended Complaint Alleged Facts Sufficient To State a Claim For Cancellation Of Instrument.**

Nguyen alleged (1) the Note was not endorsed to Bank of America, (2) there is no assignment of the Loan from FDIC to JP Morgan, and (3) the 03/30/09 Assignment of Deed of Trust was signed as "JP Morgan Chase a successor-in-interest to Washington Mutual Bank, F.A." and such action was without authority. (Excerpts, at 26-28.)

In *Wutzke v. Bill Reid Painting Service* (1984) 151 Cal.App. 3d 36, the borrower fraudulently executed a deed of reconveyance and recorded it. Observing that the person who executed had no power to execute, thus the execution was a fraud, the Court made clear that a deed instrument that was fraudulently prepared and recorded is *void ab initio*. As such, the instrument is of no effect on subsequent (but legitimate) instruments. Since the agent who executed the instrument did not receive a request from the person who had authority (the beneficiary), "the signing of any name, fictitious or otherwise, was unauthorized."

25

In the instant case, JPMorgan executed the 03/30/09 Assignment without authority from beneficiary Washington Mutual Bank, F.A.  (Excerpts, at 26-27.)  As such, the purported assignment by JPMorgan was unauthorized.

Similarly, in *Sacchi v. MERS, et al*., (2011) (U.S. Dist. Ct., CD of Cal. case no. 11-cv-1958), the court dealt with motion to dismiss a claim for relief for cancellation of a deed instrument.  The plaintiffs' claims were based on allegations that (1) the substitution of trustee is invalid; (2) the notice of trustee's sale is invalid; (3) MERS did not have authority to assign the deed; (4) the defendants did not comply with California Civil Code § 2923.5; and (5) the defendants engaged in unfair competition through various fraudulent acts, material misstatements, and intentional violations of California statutes.  The defendants argued that all of the claims fail as a matter of law.  The court held "defendants are mistaken.  They filed a motion to dismiss, not a motion for summary judgment.  At issue here is only whether Plaintiffs properly have stated claims for relief.  Defendants' motion in certain respects is based on their efforts to disprove as factually unfounded several of Plaintiffs' allegations, but they cannot properly do so at this stage of the litigation."  The court therefore denied the motion to dismiss the cause of action for cancellation of a deed instrument.

**E.    Nguyen's First Amended Complaint Adequately States A Claim For Relief For Slander Of Title.**

Slander of title is a tort that consists of a false, malicious and unprivileged disparagement of another person's title to real or personal property resulting in pecuniary loss or damage.  The action is for an invasion of the party's interest in the marketability or vendibility of its property.  MILLER AND STARR, CALIFORNIA REAL ESTATE 3D, RECORDING PRIORITIES, 108-109.  This cause of action consists of six elements: (1) There must be a direct or indirect disparagement of the owner's title. (2) The disparaging statement must have been published.  *Gudger v. Manton* (1943) 21 Cal.2d 537 (*overruled on other grounds Albertson v. Taboff* (1956) 46 Cal.2d 375). (3) The disparaging statement must be untrue. (4) The statement that was published was not privileged and without justification. *Albertson v. Raboff, supra* at 378-79, 381. (5) The statements must have been made without malice, express or implied.  *Spencer v. Harmon Enterprises, Inc.* (1965) 234 Cal.App.2d 614, 622; *Gudget v. Manton*, *supra* at 543-44. (6) Plaintiff has suffered, as a proximate cause of the disparaging statements published, a pecuniary loss or damage as the owner of their interest.

In the First Amended Complaint, Nguyen alleged (1) JPMorgan's claim that it is the owner of the loan of the property, in ¶ 57; (2) the Assignment was recorded, ¶¶ 57 and 58; (3) the claim is untrue, ¶¶ 57 and 59; (4) JPMorgan's claim as owner of the note was unprivileged and unjustified, ¶ 59; (5) the statement was

27

done with malice, ¶ 60, and (6) the slander is a proximate cause of Nguyen's

damage, ¶¶ 60-61.  (Excerpts, at 32-33.)

Nguyen therefore met her burden of alleging sufficient facts that state a

claim for relief for slander of title.

**F.     Nguyen's First Amended Complaint Alleges Facts Sufficient To State A Claim For Injunctive Relief.**

The purpose of an injunction is to preserve the status quo pending

disposition of the case.  A party seeking preliminary injunctive relief under

Fed.R.Civ.P. 65 must show (1) a likelihood of success on the merits, (2) a

significant threat of irreparable harm, (3) that the balance of hardships favors the

applicant, and (4) whether any public interest favors granting an injunction.  *Raich*

*v. Ashcroft*, 352 F.3d 1222, 1227 (9th Cir. 2003), *vacated and remanded on other*

*grounds Gonzalez v. Raich*, 545 U.S. 1 (2005).

At the time Nguyen filed her Complaint, there was a strong likelihood that

she would prevail in her main causes of action.  Irreparable harm would occur to

Nguyen if the restraining order and/or the injunctive relief are not granted.

(Excerpts, at 33-34.)  Further, an injunction postponing the foreclosure sale until

the material issues had been adjudicated on the merits would not have been

prejudicial to Bank of America and the other defendants.  (*Id*.)

Lastly, public policy favored granting injunctive relief to Nguyen.

Nguyen's First Amended Complaint alleges several causes of action; however, to show the court that the First Amended Complaint had a high chance of success, it is sufficient to discuss whether the defendants have standing to do what they are doing, in connection with the cause of action for cancellation of the deed instrument, and the cause of action for wrongful foreclosure.

In *Hooker v Northwest Trustee Services, Inc., et al*., U.S. Dist. Ct., Ore., case no. 10-3111-FA, plaintiff Hooker obtained a loan with lender GN Mortgage LLC. The deed of trust (but not the note) mentions "MERS as nominee" for lender GN. Later, Hooker defaulted.  While GN took no action, MERS came, assigned the DOT to Bank of America, and appointed Northwest Trustee Service ("Northwest") as the new trustee.  Northwest then proceeded in its foreclosure of Hooker's home. Hooker filed a complaint, and sought declaratory relief that Northwest and Bank of America had no right to foreclose upon Hooker's home.  The Oregon District Court ordered the banks to produce a chain of title.  The chain produced shows transfers from one bank to another but the direct lender GN was completely absent from all of those transfers.  Based on the fact that the chain of title was broken, and relying on Oregon state law that transfers of interest in mortgage loans must be recorded, the court granted Hooker his declaratory relief and declared that the bank defendants violated the state law regarding required recordings in title transfers and ordered dismissal of the foreclosure proceeding.

29

In the present case, the lender on the note and the DOT is Washington Mutual Bank, F.A.  (Excerpts, at 25, 46-66.)  The Note carries no endorsement from Washington Mutual Bank, F.A. to Chase.  (Excerpts, at 46-50.)  On the county official records, there is no assignment of the DOT from Washington Mutual Bank, F.A to Chase.  (Excerpts, at 26.)  Applying the rule just derived from Hooker, a break in title occurred when Chase assigned the Loan to Bank of America in March 2009; therefore, the defendant banks violated the law.

In *Javaheri v. JPMorgan Chase Bank*, US Dist. Ct., CD of Calif., case no. CV10-08185 ODW, June 2, 2011, Javaheri obtained a mortgage loan from Washington Mutual Bank.  JPMorgan acquired Washington Mutual Bank, SFB, a different entity, and claimed that it became owner of the note and the deed of trust secured by Javaheri's home.  When Javaheri defaulted on the payments, JPMorgan instructed trustee California Reconveyance Company ("CRC") to foreclose upon the home.  Javaheri sought court protection by filing a complaint. Chase filed a motion to dismiss Javaheri's complaint.  Javaheri opposed the motion.  The court found (1) that JPMorgan never recorded its note ownership with the local county recorder, and (2) that in an attempt to prove its wholesale acquisition of WaMu assets, JPMorgan produced a "Purchase and Assumption Agreement" ("PSA"), but Chase could never prove that Javaheri's loan is included in that Agreement.  Based on the findings, "The Court finds that Plaintiff has now sufficiently alleged that

30

JPMorgan did not own his Note and therefore did not have the right to foreclose." The facts in this case are virtually identical to the facts of Javaheri.

Lastly, in *Kim v. JPMorgan Chase Bank, N.A.*, 2012 Mich. LEXIS 2220, the Michigan Supreme Court held that the manner in which JPMorgan Chase acquired the plaintiff's mortgage was unlawful. Because JPMorgan Chase acquired the mortgage through a voluntary purchase agreement, JPMorgan Chase was required to comply with the state statute pertaining to the transfer of mortgages. The foreclosure sale was thus voidable. The transfer from WaMu to the FDIC was a lawful transfer, but the transfer from the FDIC to JPMorgan Chase, because it was a voluntary transfer, should have complied with the state statutory provisions. The assignments which are required to be recorded are those which are executed by the voluntary act of the party.

12 U.S.C. § 1821(d)(2) sets forth the FDIC's authority to dispose of a failed bank's assets. The FDIC may merge the insured depository institution with another insured depository institution; or transfer any asset or liability of the institution in default without any approval, assignment, or consent with respect to such transfer.

Here, a merger did not occur. In selling WaMu's assets to JPMorgan Chase, the FDIC relied on a different statutory provision. 12 U.S.C. § 1821(d)(2)(A).

31

With respect to this transfer, the FDIC acquired plaintiffs' mortgage by operation of law.

But the FDIC then transferred those assets to defendant. The dispositive question is whether the second transfer of WaMu's assets—the transfer from the FDIC to defendant—took place by operation of law.

The court held that the authority to foreclose such mortgages by advertisement is purely statutory, and all the requirements of the statute must be substantially complied with. The assignments which are required to be recorded are those which are executed by the voluntary act of the party, and this does not apply to cases where the title is transferred by operation of law; the objective of the statute being to restrict the execution of the power to the owner of the legal title to the instrument. Thus, a transfer occurs by operation of law when it takes place involuntarily or as the result of no affirmative action on the part of the transferee. Black's Law Dictionary defines "operation of law" as the means by which a right or a liability is created for a party regardless of the party's actual intent. Thus, a transfer that takes place by operation of law occurs unintentionally, involuntarily, or through no affirmative act of the transferee.

The court concluded that the transfer of WaMu's assets from the FDIC to defendant did not take place by operation of law. JPMorgan Chase acquired

WaMu's assets from the FDIC in a voluntary transaction; thus the state statutory requirements need to be satisfied.

JPMorgan Chase contended that the transfer occurred by operation of law because, although not a merger, the transfer was analogous to a merger and should be treated as one.  The court held that 12 U.S.C. § 1821(d)(2)(G)(i)(l) empowered the FDIC to merge WaMu with another financial institution such as defendant.  Had a merger occurred under that statutory provision, JPMorgan Chase would have a strong argument that it had merely stepped into the shoes of WaMu.  It would have had no need to engage in a transfer of any of WaMu's assets.

But here, a merger did not occur.  In selling WaMu's assets to defendant, the FDIC relied on a different statutory provision.  12 U.S.C. § 181(d)(2)(G)(II), which allows the FDIC to "transfer" the assets and liabilities of failed institutions.  Hence, although the FDIC could have effectuated a merger in reliance on subsection (d)(2)(G)(i)(I), it explicitly chose not to do so.  Indeed, the FDIC submitted an affidavit to the Court that describes the transaction, specifically citing the subsection of the statute authorizing transfers, rather than the subsection authorizing mergers.  The court stated that it will not conclude that a merger took place when the FDIC so clearly chose to engage in a  different type of transaction under a different statutory provision.  "Although the FDIC's affidavit purports that

33

the sale of WaMu's assets to defendant was effected by operation of law, the FDIC may not by unilateral declaration make it so."

The same is true in the instant case.

## G. Nguyen's First Amended Complaint States Facts Sufficient To State A Claim For "Quasi-Contract."

Defendants admit that "when a person receive a benefit from another, he is required to make restitution only if the circumstance of its receipt or retention is such that a between two persons, it is unjust for him to retain it." *Ghirado v. Antonioli* (1996) 14 Cal. 4th 39, 51. The First Amended Complaint alleges that since October 2008, JPMorgan has received payments from Nguyen notwithstanding that defendants' claim of ownership of the note is wrongful. (Excerpts, at 25-26.) Whether it is wrongful, or not, is not within the scope of the subject motion to dismiss.

## H. Nguyen's First Amended Complaint States Facts Sufficient To State A Claim For Unfair Business Practices.

Defendants argue, in cursory fashion, that Nguyen's claim for unfair business practices fails because (a) it is not pleaded with specificity, and (b) Nguyen failed to allege injury in fact. Defendants do not explain just what is lacking in Nguyen's allegations. In fact, Nguyen has pleaded specific facts in support of this claim, as follows:

(a) Falsely inflating Nguyen's income and assets by Washington Mutual Bank.  ¶¶ 95, 96.

(b) Misrepresenting Nguyen's income and creditworthiness with third parties who buy the loans on the secondary market; ¶ 97.

(c) Making false disclosures to potential buyers of the loan, and this will ultimately lead to the crash in the national real estate market.  (Excerpts, at 40.)

Whether these allegations are ultimately proven to be true is not within the scope of the motion to dismiss.

## I.    Nguyen Should Have Been Granted Leave To Amend

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.  Fed.R.Civ.P. 15(a) empowers the court to freely grant leave to amend when there is no "undue delay, bad faith or dilatory motive on the part of the movant, … undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment …"  *Forman v. Davis*, 371 U.S. 178, 182 (1962).  The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any

35

amendment." *Intri-Plex Techs. v. Crest Grp., Inc.*, 49 F.2d 1048, 1056 (9th Cir. 2007) (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005)).

Here, Nguyen's claims are sufficiently plead. However, even if they were not, Nguyen should have been allowed leave to amend to cure any deficiencies that existed on the face of the complaint. To summarily dismiss the First Amended Complaint without leave to amend was an abuse of discretion (even though Nguyen does not need to establish abuse of discretion, she still believes that it exists here.).

**J.     The Trial Court Erred In Entering An Order For Sanctions.**

On November 15, 2011, the trial court entered its order of dismissal. (Excerpts, at 147-166.) On November 28, 2011, Nguyen filed her notice of appeal. (Excerpts, at 1-3.) On March 2, 2012, the trial court entered an order for sanctions. (Excerpts, at 9.)

The filing of a notice of appeal divests the district court of jurisdiction over the case. Since Nguyen filed her notice of appeal on November 28, 2011, the trial court did not have jurisdiction to enter an order for sanctions on March 2, 2012. Nguyen therefore requests that the order for sanctions be vacated.

Alternatively, Nguyen requests that the order for sanctions be held in abeyance until a final ruling on the merits of the case is made, and reconsidered at that time.

## VIII.  CONCLUSION

The trial court erred in dismissing Nguyen's claim based upon violation of California Civil Code § 2923.5.  There is an issue of fact as to whether Chase and/or its agents satisfied its due diligence obligations under § 2923.5.  Nguyen adequately alleged facts in her First Amended Complaint that support her claim.  Even then, she could have amended her complaint to provide additional allegations.  The order granting dismissal of her claim for violation of § 2923.5 and the trial court's refusal to allow her leave to amend was in error.

The trial court also erred in dismissing Nguyen's claims for wrongful foreclosure, cancellation of instrument, slander of title, unfair business practices, quasi-contract and injunctive relief.  Nguyen adequately alleged facts in her First Amended Complaint to support her claims.  And even then, could have amended her complaint to provide additional facts if allowed to do so.

This case should be remanded with instructions to reverse the dismissal and allow Nguyen an opportunity to prove her claims.

## IX.    STATEMENT OF RELATED CASES

There are no other cases in this Court that are related.

Respectfully submitted this 27th day of June, 2013.

> s/Julie Cliff
> Julie Cliff, Esq.
> Attorneys for Plaintiff-Appellant
> 25A Crescent Dr., #363
> Pleasant Hill, CA  94523
> Telephone:  (719) 331-0727

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,434 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 Times New Roman 14.

<u>s/Julie Cliff</u>
Julie Cliff, Esq.
Attorneys for Plaintiff-Appellant
25A Crescent Dr., #363
Pleasant Hill, CA 94523
Telephone: (719) 331-0727

## X.     CERTIFICATE FOR BRIEF IN PAPER FORMAT

I, Julie Cliff, certify that this brief is identical to the version submitted electronically on June 27, 2013.

s/Julie Cliff
Julie Cliff, Esq.
Attorneys for Plaintiff-Appellant
25A Crescent Dr., #363
Pleasant Hill, CA 94523
Telephone: (719) 331-0727

## CERTIFICATE OF SERVICE

I certify that on June 27, 2013, I caused the foregoing document to be served via U.S. mail, first class, postage prepaid, addressed as follows:

Teri H. Nguyen
c/o Vince D. Nguyen, Esq.
1361 S. Winchester Blvd., Ste. 111
San Jose, CA 95128

Vince D. Nguyen, Esq.
Newton Law Group
1361 S. Winchester Blvd., Ste. 111
San Jose, CA 95128

Andrea McDonald Hicks, Esq.
Bryan Cave LLP
560 Mission St., 25th Flr.
San Francisco, CA 95105

Sung-Min Christopher Yoo, Esq.
Mariel A. Gerlt, Esq.
AlvaradoSmith
1 MacArthur Place, Suite 200
Santa Ana, CA  92707

<u>s/Julie Cliff</u>
Julie Cliff, Esq.
Attorneys for Plaintiff-Appellant
25A Crescent Dr., #363
Pleasant Hill, CA  94523
Telephone:  (719) 331-0727